Don W. **CROCKETT**, Plaintiff,

v.

Bill **RICHARDSON**, Secretary of Energy, Defendant.

No. Civ.A. 98–1918ESH.

United States District Court, District of Columbia.

Jan. 8, 2001.

David H. Shapiro, Swick & Shapiro, Washington, DC, for plaintiff.

Lisa Ann Olson, Lois B. Osler, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

This case is brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). Plaintiff alleges that he was subjected to unlawful age discrimination when he was not promoted to the Senior Executive Service ("SES") position of Assistant General Counsel for Contractor Litigation by Robert Nordhaus, the then General Counsel of the Department of Energy ("DOE"). At the time that plaintiff was passed over for the job, he was fifty-eight years old and had worked at DOE since 1978. At trial defendant contended that DOE General Counsel Nordhaus, who was fifty-nine at the time, was not motivated by any discriminatory animus and that he chose Gary Stern, who was thirty-six years old at the time, because he believed that Stern was better qualified for the job.

The case was tried before this court on November 20–23, 2000. The court heard testimony from twelve witnesses, including many past and present employees of DOE's Office of General Counsel. Based on the evidence heard and exhibits submitted during the trial, the Proposed Findings of Fact and Conclusions submitted by both parties, the applicable case law, and the entire record, the court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

**A. Plaintiff's Legal Career**

1. Don Crockett was born on January 16, 1938. After graduating from Harvard Law School in 1966, he practiced law in firms in Salt Lake City and Washington,

D.C. until 1972. He was then a solo practitioner for a year. While in private practice, plaintiff did civil and criminal litigation. In 1973 he joined the Renegotiation Board as Assistant General Counsel for Litigation, where he reviewed the profits of defense contractors. In particular, he assisted Department of Justice ("DOJ") lawyers in litigating cases against defense contractors for recovery of excessive profits.

2. In 1978 plaintiff joined DOE as a senior staff attorney at the GS–15 level. He became one of five Deputy Assistant General Counsels who supervised the litigation of numerous petroleum price control cases before United States District Courts and the newly-established Temporary Emergency Court of Appeals.

3. Following an internal DOE reorganization in 1985, Crockett was promoted in 1987 to the position of Director, Office of Judicial Litigation for the Economic Regulatory Administration ("ERA"), the agency within DOE responsible for price control litigation. In that position, plaintiff supervised two deputies and twenty staff attorneys. While at the ERA, plaintiff personally handled or supervised hundreds of price control cases in a variety of courts and was involved in several class action suits.

4. In 1995 the ERA was merged into DOE's Office of General Counsel as a result of a dwindling caseload, and in 1996, the ERA office on Capitol Hill was closed and the staff was moved back to the Forrestall Building. Plaintiff's title was changed to Deputy Assistant General Counsel for Litigation, and in 1996 he began to do non-price control cases. All of plaintiff's supervisory responsibilities also came to an end in 1996.

5. While at the DOE, plaintiff consistently received outstanding performance ratings, and he received an Exceptional Service Award in 1990. In that same year he was nominated by the Judicial Nominating Commission for possible appointment to the bench of the Superior Court of the District of Columbia, but was not chosen. On at least three occasions prior to 1996, plaintiff applied but was rejected for a SES position at DOE. The selecting official for each of these SES positions was someone other than Nordhaus.

6. It is uncontested that Crockett was an experienced litigator, that lawyers both in and out of DOE thought highly of his skills, and that he did an excellent job handling price control cases.

## B. Gary Stern's Legal Career

7. Stern, the person who was officially hired as Assistant General Counsel for Contractor Litigation on February 4, 1997, was born on March 31, 1960. After graduating from Yale Law School in 1987, Stern worked for the ACLU Center for National Security Studies on constitutional cases involving national security issues. In that capacity, Stern wrote briefs and motions and did policy and legislative work. After the ACLU, Stern served as a Senior Policy and Research Analyst to the U.S. Federal Advisory Committee on Human Radiation Experiments. In that position, he had primary responsibility for advising the Committee on secrecy and classification issues. While at the Committee, Stern worked with Nordhaus, who was then General Counsel of DOE, and Lisa Schiavo, Nordhaus' Special Assistant.

8. In 1995 Stern joined DOE's Office of General Counsel in a GS–15 position as the Deputy Assistant General Counsel for Information Law. His supervisor was Ralph Goldenberg. Stern received an outstanding performance rating while working for Goldenberg, and he had supervisory responsibility for three lawyers. While in that position, Stern was involved in several high profile, complicated DOE contractor litigation matters, i.e., the Rocky Flats litigation in Colorado, a mass tort action involving radiation injuries from plutonium exposure, and a class action involving human radiation experiments. Nordhaus was also intimately involved in these large matters.

9. In July 1996 Stern replaced Lisa Schiavo as Nordhaus' Special Assistant. Prior to that time, Schiavo, who had been at DOE for two years, had been Nordhaus' Special Assistant, as well as the Acting Assistant General Counsel for Contractor Litigation. At the time she worked at DOE, Schiavo was in her late twenties or early thirties. Her appointment as Acting Assistant General Counsel was a non-career SES appointment (*i.e.*, a non-competitive appointment). Upon Schiavo's departure, Nordhaus appointed Janine Sweeney as the Acting Assistant General Counsel for Contractor Litigation. At the time of her appointment, Sweeney was fifty-two years old. Her supervisor was Marc Johnston, who was the Deputy General Counsel for Litigation.

10. As Special Assistant, Stern was intimately involved in all aspects of DOE contractor litigation, including attempts to settle the human radiation cases, various whistleblower cases, and several large class actions. He also oversaw the Dispute Resolution Specialist at DOE who ran the ADR program, which was tasked with the job of settling DOE contractor cases. Three-quarters of Stern's work involved contractor litigation, and as noted by Nordhaus, the division of responsibility between Sweeney and Stern was often blurred.

11. On September 16, 1996, Stern was officially named by Nordhaus as Acting General Counsel for Contractor Litigation, and his appointment became permanent on February 4, 1997. The appointment on an acting basis was done non-competitively, in contrast to the permanent appointment. The selecting official was Robert Nordhaus, who was General Counsel of DOE from July 1993 until March 1, 1997. Nordhaus was born in 1937.

## C. The Selection of Stern as Assistant General Counsel for Contractor Litigation

12. A job vacancy for the position of Assistant General Counsel for Contractor Litigation was posted in mid-August 1996, with a closing date of September 16, 1996. Sweeney had been appointed by Nordhaus to the position on an acting basis after Schiavo's departure from DOE in July 1996. However, Sweeney did not want to continue in the job.

13. The August 1996 vacancy announcement for the Assistant General Counsel for Contractor Litigation, which was an SES position, described the job duties and responsibilities, and listed the five qualification requirements that are Executive Core Requirements common to all SES positions and the seven technical qualifications that are unique to the position. These technical qualifications were composed, based on the job position description, by the personnel department within the Office of General Counsel and signed off on by Nordhaus in his capacity as General Counsel.

14. The technical qualifications listed were as follows:

1. Admission to the Bar in one or more U.S. jurisdictions.

2. Working knowledge and experience in litigation and class action lawsuits.

3. Ability to analyze highly complicated factual situations and to recognize the legal and policy issues involved.

4. Experience in litigation management, particularly in setting out and defining litigation costs and litigation plans.

5. Strong communication and interpersonal skills, as well as an ability to work in groups, including teams and committees.

6. Ability to write clearly and distinctly and to make effective written arguments and presentations of recommendations.

7. Highly developed organizational skills and ability to manage a heavy, and often times, sensitive workload.

2. Stern submitted his application for the position on September 16, 1996, the same day he was officially designated as Acting Assistant General Counsel for Contractor Litigation. He did not submit a separate supplemental statement detailing his technical qualifications as part of his application. Instead, he included his discussion of his technical qualifications within his Qualifications Statement that addressed the five Executive Core Qualifications. He believed that the application, his resume and his Qualifications Statement were sufficient to cover adequately his technical qualifications.[1]

3. The vacancy announcement did not require two supplemental statements, but only required a "[s]upplemental statement addressing each of the qualification requirements listed above, ..." Pl.Ex. 1. Moreover, as indicated by one of the DOE attorneys who had had experience serving on SES selection panels, there is no consistent form; technical qualifications and Executive Core Qualifications may have been submitted as one form; and if the necessary information can be gleaned from application, it is unlikely that the application would be rejected.

4. The Merit Staffing Committee which reviewed all applications for the position of Assistant General Counsel for Contractor Litigation included Robert Rabben, Douglas Smith and Mary Egger. The Committee rated five candidates, including Crockett and Stern, as "superior." The five names were then submitted to Nordhaus on or about October 7, 1996.[2] Nordhaus

had no involvement in the Committee's review process.

5. Nordhaus did not fill the Assistant General Counsel for Contractor Litigation position until February 1997, after having requested two extensions of the selection certificate for the position. Nordhaus did not specifically recall why it had taken him so long to make the decision, but he recalled raising a question as to whether he could go off the list provided by the Merit Staffing Committee to consider Alan Lear and that this may have delayed his decision-making process. Further, Cynthia Ford, who was in charge of personnel at the General Counsel's Office, noted that it was not unusual for Nordhaus to request an extension. By contrast, Nordhaus appointed Stephen Skubel, who had been serving as the Acting Assistant General Counsel for Litigation since 1990, immediately after the applications were transmitted to him by the Merit Staffing Committee.

6. Nordhaus did not conduct interviews since he knew the applicants. However, he met briefly with Crockett after he scheduled an appointment with Nordhaus to talk about the position. Before making his decision, Nordhaus spoke to Marc Johnston, who was Deputy General Counsel for Litigation, to inquire whether he would be comfortable with Stern as his assistant. Johnston agreed that he would.

7. In making his decision with respect to the Assistant General Counsel for Contractor Litigation, Nordhaus was mindful of the need to find a person who could

---

1. After Stern became the Assistant General Counsel for Contractor Litigation, he was contacted by Cynthia Ford from the Administrative Office of the General Counsel. Ford requested that he submit a separate supplemental statement covering his technical qualifications. *See* Pl.Ex. 4. What prompted her to request this information is not known.

2. It is significant that in 1998, a Merit Staffing Committee, also chaired by Robert Rabben, rejected certain applicants on the grounds that they did not submit a supplemental statement addressing the technical

qualifications, the Executive Core Qualifications or both, as required by the vacancy announcement. In contrast, Rabben's Merit Staffing Committee accepted Stern's application despite the absence of a separate statement regarding his technical qualifications. The fair inference is that in contrast to the 1998 applications, which the Committee rejected, it found Stern's application to be sufficient to satisfy the requirements of the vacancy announcement and that, from the Committee's point of view, there was nothing irregular about his application.

manage DOE contractor litigation. This goal had become a high priority after the DOE was criticized in a widely-publicized Congressional hearing in June 1994 for failing to document and justify its expenditure of some $40–50 million per year to reimburse the fees and costs incurred by the contractors' outside counsel.[3] In response, Nordhaus had established a Contractor Litigation Section to oversee the litigation, to develop a system to keep track of the cases and the litigation costs, and to supervise outside counsel. From Nordhaus' viewpoint, experience with the contractor litigation management system, as opposed to actual litigation or trial experience, was the most important attribute for the job. Thus, of the seven technical qualifications listed in job vacancy, the second requirement ("working knowledge and experience in litigation and class action lawsuits") was not as essential as requirements 3–7.

8. Nordhaus denied that age played any part in his promotion decision. Rather, he appointed Stern because he believed that Stern had had more experience with the management program that had been put in place to control DOE contractor litigation and its costs. Nordhaus was of the view that from the time that Stern joined DOE, he had been involved in various aspects of DOE contractor litigation, and that he was the most qualified candidate for overseeing these cases because of his familiarity with the auditing system, the cost controls and the procedures for resolving high profile and politically sensitive cases. Stern had impressed Nordhaus with the quality of his work, his breadth of knowledge and the speed with which he mastered complex matters. Nordhaus had come to rely on Stern, and as Special Assistant, Stern had assumed management responsibility for some of the most challenging contractor cases and had also worked in conjunction with Sweeney and Nordhaus on other difficult contractor cases.

9. In contrast, Nordhaus viewed Crockett as being less qualified than Stern for the position of Assistant General Counsel for Contractor Litigation. Nordhaus was familiar with Crockett's work, including his handling of price control cases, and although he considered Crockett to be good in this highly-specialized and limited area of the law, he thought that Crockett was not as familiar as Stern with the multi-faceted legal and policy issues that commonly arise in DOE contractor cases, and that unlike Stern, Crockett lacked the experience and mindset to deal with highly-controversial and politically-charged DOE contractor cases. Nordhaus also believed that Stern had had more hands-on experience with implementing and overseeing the cost management program which Nordhaus and Schiavo had instituted, and that he had had more experience with settling these types of cases.

10. While Nordhaus acknowledged that Crockett's litigation experience far exceeded Stern's limited experience, he considered that particular qualification to be far less important than experience with the litigation management system for the DOE contractor cases. As testified by Nordhaus, as well as by Marc Johnson who supervised the Assistant General Counsel for Contractor Litigation, actual litigation experience was not essential because the job did not involve going to court, and, except in the rare case, the line attorneys in the field offices, not the Assistant General Counsel, were the attorneys who actually had direct contact with and oversight over the private lawyers who represented the contractors.

### CONCLUSIONS OF LAW

1. Plaintiff has met his initial burden of establishing a prima facie case of age discrimination under the ADEA. He is

---

**3.** Under the law, DOE cannot be sued for various torts, but DOE contractors are subject to suit, and pursuant to contract, DOE is often responsible for reimbursing the contractors for their litigation costs and any judgment.

a member of a protected class, he applied for and was qualified for the position at issue, he was rejected for that position, and the position was filled by someone who was considerably younger. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, defendant has "articulate[d] some legitimate, nondiscriminatory reason for the employee's rejection," *id.* at 802, 93 S.Ct. 1817, and thus, defendant, by producing evidence that plaintiff was rejected because another applicant was considered to be better qualified for the position, has rebutted plaintiff's prima facie case. Plaintiff must now "demonstrate that the proffered reason was not the true reason for the employment decision," which "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[4]

■ 2. Plaintiff has failed to carry this burden, for plaintiff has neither "persuad[ed] the court that a discriminatory reason more likely motivated" defendant nor shown that defendant's "proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089.

3. The court is convinced that the promotion decision reflects Nordhaus' prioritization of the necessary job qualifications and his assessment that Stern, as opposed to Crockett, was better able to perform the job functions that Nordhaus considered to be the most critical. Nordhaus was impressed with Stern's work and his ability to handle complicated and politically sensitive matters. He had had experience working with him on the President's Advisory Committee on Human Radiation Ex-periments, as his Deputy Assistant General Counsel for Information Law and as his Special Assistant prior to appointing him as Acting Assistant General Counsel for Contractor Litigation in September 1996. Based on this experience, he trusted Stern, knew that he was familiar with the substantive areas of law at issue in the DOE contractor cases, and believed that he would effectively oversee the DOE contractor litigation and would achieve the policy and programmatic objectives of the litigation management system that Nordhaus had initiated.

4. In an attempt to rebut defendant's legitimate, nondiscriminatory reasons, plaintiff continually emphasizes his many years of litigation experience. The selecting official did not consider this particular technical qualification to be as important as the other technical qualifications, and the law does not require that each technical qualification be accorded equal weight or that the number of years of litigation experience should take precedence over all other qualifications listed in the job vacancy. Nor can the court agree that Nordhaus' reasons for his decision were not legitimate. His reasons did not, as argued by plaintiff, amount to hidden qualifications not set out in the job vacancy. Rather, the vacancy announcement made clear that "experience in litigation management" (# 4), as well as the "ability to analyze highly-complicated factual situations and to recognize the legal and policy issues involved" (# 3), were necessary qualifications, and there is no prohibition against ranking these qualifications above "experience in litigation . . . ." (# 2). There has thus been no violation of 5 C.F.R.

---

4. Further, as held by the Supreme Court in *Burdine*, the law does not

require the employer to hire . . . [the older] applicant whenever that person's objective qualifications [are] equal to those of a . . . [younger] applicant. . . . Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to [ADEA] liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. . . .

*Id.* at 259, 101 S.Ct. 1089 (citations omitted).

§ 317.402.[5] Nor is there any evidence that Nordhaus "grant[ed] any preference or advantage not authorized by law, rule or regulations ... for the purpose of improving or injuring prospects of any particular person for employment." 5 U.S.C. § 2302(b)(6). Contrary to plaintiff's argument, the law does not prohibit Nordhaus from selecting Stern on an "acting" basis prior to appointing him to the position, and there is no basis upon which to conclude that in the absence of his experience as Acting Assistant General Counsel for Contractor Litigation, Stern was not qualified for the job.

5. Moreover, the ADEA does not require defendant to base its promotion decision solely upon numerical or "objective" factors, as opposed to qualitative or "subjective" factors. Obviously, Crockett had many more years of legal experience, but the law does not demand that the employer promote the person with the greatest number of years of experience. Nor is there anything unlawful about an employer's qualitative assessment of an applicant's legal talents and abilities to handle the types of challenging cases considered to be the most important to the defendant. While it is uncontested that plaintiff is considered to be well qualified for and performs well in his present position, the court is persuaded that Stern had demonstrated to the selecting official the very skills that made him better suited for promotion to the management position at issue.

6. Further, the court does not find that the reasons given at trial for the selection of Stern over Crockett were materially different from those given by Nordhaus to the EEO investigator in March 1998. (Pl. Ex.10, ¶¶ 6, 7). It is of no significance that Nordhaus failed to mention specifically Crockett's lack of emphasis on settlement.

When interviewed by the EEO investigator, Nordhaus emphasized that he believed that Stern "had been supervising the contractor litigation work for a number of months and had more experience than the other candidates in dealing with litigation against DOE's contractors," whereas he believed that Crockett lacked "the breadth of experience or current knowledge necessary to supervise ... the Department's ... contractor litigation work." (Pl. Ex.10). Defendant did not present a "moving target," as argued by plaintiff, but on the contrary, defendant has been consistent in its comparative assessment of the candidates' qualifications.

7. Any claim of discrimination is further belied by the fact that the selecting official is the same age as the plaintiff and that the person he selected prior to Stern—Janice Sweeney—was fifty-two years old at the time.

8. It is not this court's job to decide if defendant's proffered reasons were wise, fair, or correct, but rather, whether defendant honestly believed those reasons and acted in good faith upon those beliefs. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) ("[I]t is not enough for the plaintiff to show that a reason for a job action is not just, or fair, or sensible," for "the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.") (quotation marks and citations omitted). The court concludes that defendant did act in good faith based upon a reasonable and rationale assessment of Stern's qualifications, as compared to those of the plaintiff. The appointing official exercised a legitimate preference for someone who had proven himself to be up to the task of handling the very types of legal matters that would fall under this

---

5. Further, plaintiff's reliance on 5 C.F.R. § 317.402(c) is misplaced. This regulation prohibits imposing agency-related experience requirements "to the extent that it precludes otherwise well-qualified candidates from out-side the agency from appointment consideration." Since plaintiff was not a "candidate from outside the agency," he cannot benefit from this regulatory provision.

control as the Assistant General Counsel for Contractor Litigation, and therefore, "the discretion involved in [this] promotion, so long as not influenced by unlawful factors, belongs to the employing agency and not to ... the trier of fact." *Chennareddy v. GAO,* No. 88–1076, 1988 WL 145096, at *2 (D.C.Cir. Dec. 30, 1988) (per curiam). *See also supra* note 4; *Russell v. Baker,* 1988 WL 90124 (D.D.C. 1988).

9. For the reasons set forth above, the court concludes that there is insufficient evidence to conclude that defendant discriminated against plaintiff. Accordingly, plaintiff's request for damages must be denied and the complaint must be dismissed.