Don W. CROCKETT, Appellant

v.

Spencer ABRAHAM, Secretary
of Energy, Appellee

No. 01–5075.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 2002.

Decided March 29, 2002.

David H. Shapiro argued the cause and filed the briefs for appellant.

Richard A. Olderman, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General, Roscoe C. Howard, Jr., U.S. Attorney, and Marleigh D. Dover, Special Counsel, U.S. Department of Justice. Irene M. Solet, Attorney, entered an appearance.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Senior Circuit Judge:

Don W. Crockett sued the Department of Energy in district court, claiming that the Department of Energy's failure to promote him to Assistant General Counsel for Contractor Litigation in 1997, and again in

1999, violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The district court rejected his claims and Crockett appeals. We affirm.

\*     \*     \*

In August 1996 the Department of Energy announced a vacancy for the post of Assistant General Counsel for Contractor Litigation, a position in the Senior Executive Service. Crockett applied. At the time he was 58 years old and an 18–year veteran of the Department, and had served from 1987–1995 as director of the Judicial Litigation Division of the Economic Regulatory Administration. There he had handled and supervised the Department's price control litigation. With the dwindling of that specialty and a reorganization of the Department, Crockett had held the position of Deputy Assistant General Counsel for Litigation since 1995 and had started handling non-price control cases. *Crockett v. Richardson,* 127 F.Supp.2d 40, 41–42 (D.D.C.2001).

On reviewing the records of 19 applicants, a Merit Staffing Committee in October 1996 rated five candidates as "Superior" (the highest of four possible rankings: Superior, Very Good, Acceptable, and Not Qualified), the rest lower. Among the five were Crockett and Gary Stern. Stern, then 36 years old, had joined the Department in 1995 as Deputy Assistant General Counsel for Information Law, and had been Special Assistant to then-General Counsel Robert Nordhaus. Stern had previously been "involved in several high profile, complicated DOE contractor litigation matters," including "the Rocky Flats litigation in Colorado, a mass tort action involving radiation injuries from plutonium exposure, and a class action involving human radiation experiments." *Id.* at 42. Nordhaus had appointed Stern as the Acting Assistant General Counsel for Contractor Litigation in September 1996, and in

February 1997 selected him as the new Assistant General Counsel for Contractor Litigation.

In July 1998 Crockett filed the present suit, alleging that he had been denied the position due to age discrimination. At about the same time, Stern left the Department to become General Counsel of the National Archives and Records Administration. This vacancy prompted another candidate search, in which Crockett again applied, along with ten others. In February 1999, the Merit Staffing Committee (now with a somewhat different membership) rated two candidates as Superior, Crockett only as Very Good along with two others, and the rest lower. See Letter from Robert Rabben, Chair, Merit Staffing Committee, to Mary Anne Sullivan, General Counsel (Feb. 18, 1999) ("Rabben Letter"). Ultimately, however, the appointing official, General Counsel Mary Anne Sullivan, selected no one, but rather decided to "revise[ ] the technical qualifications" and "to re-advertise" the position. Deposition of Mary Anne Sullivan, at 62 (July 1, 1999) ("Sullivan Deposition"); see also Declaration of Mary Anne Sullivan, at ¶ 22 (Mar. 29, 2000) ("Sullivan Declaration"). Although the revisions have been made, as of Sullivan's evidence in this case the position had not been readvertised due to budgetary constraints. See Sullivan Declaration at ¶ 25; Sullivan Deposition at 62. Crockett amended his complaint to add a claim that the Department, in this later termination of the process and failure to promote him, had sought to retaliate against him for his earlier complaints of age discrimination. See Amended Compl. at ¶ 47 (Nov. 15, 1999).

At a motion hearing in July 2000, the district court granted summary judgment for the Department on the retaliation charge. Tr. of Motion Hearing at 64–66 (July 10, 2000). After a bench trial, it

rejected Crockett's age discrimination claim. *Crockett,* 127 F.Supp.2d at 48.

\* \* \*

The appeal from the district court's decision on Crockett's age discrimination claim need not detain us long. The court clearly credited the Department's explanation that Stern was more experienced and qualified than Crockett in the areas deemed most critical for the position. *Id.* at 46–47. None of the issues raised by Crockett suggests that the court's assessment of the facts was clearly erroneous, see Fed. R.Civ.P. 52(a); *Fogg v. Ashcroft,* 254 F.3d 103, 113 (D.C.Cir.2001), or that it made any error of law.

On the retaliation claim, we review the district court's grant of summary judgment de novo. *Forman v. Small,* 271 F.3d 285, 291 (D.C.Cir.2001). The district court reasoned that Crockett failed to make a prima facie case; because the Department never filled the position, it believed that Crockett suffered no adverse action. Tr. of Motion Hearing at 65–66. We express no opinion on this "adverse action" issue, cf. *Cones v. Shalala,* 199 F.3d 512, 521–22 (D.C.Cir.2000), because we find that even if there had been a prima facie case, Crockett failed to raise a genuine issue of material fact with regard to the Department's defense—that it cancelled the appointment process for legitimate, nondiscriminatory reasons. A grant of summary judgment for the government was therefore appropriate.

According to Sullivan, the position was not filled for a number of reasons. For example, the Department had not received "the skill mix that [it] wanted," Sullivan Deposition at 59–60, particularly regarding Alternative Dispute Resolution, Sullivan Declaration at ¶ 22. The Department thus wanted to try again after revising the qualifications to describe the position more accurately. *Id.* at ¶ 22. The Department

also felt that it "had not received a sufficiently diverse pool of applicants," and wanted "to place more emphasis on outreach when [it] readvertised." *Id.* at ¶ 24. Finally, Sullivan noted that the Merit Staffing Committee had concluded that no candidate had outstanding qualifications and that it could offer no strong recommendation. *Id.* at ¶ 21.

To rebut Sullivan's explanations, Crockett first contends that Sullivan's account of the Merit Staff Committee's tepid assessment of the candidates is contradicted by a letter from Robert Rabben, Chair of the Merit Staffing Committee. But the Rabben letter neither undermines nor contradicts Sullivan's account. It makes no particular recommendation and merely lists the ratings given by the committee for each applicant. See Rabben Letter. Just because the committee rated some candidates Superior or Very Good does not necessarily mean that it strongly recommended any of them. As we understand the Merit Staffing Committee Procedures, to receive an overall rating of Superior, a candidate need only receive a Superior rating in a majority of the required qualifications. Thus even a Superior candidate may have serious deficiencies. Indeed, because the procedure weights each qualification equally, a Superior candidate may actually be deficient in those areas thought most critical for the position.

Second, Crockett suggests that Sullivan's explanations at an earlier deposition were vague and that they contradicted her declaration. Self-contradiction by the moving party's witnesses may of course create a genuine issue of material fact precluding summary judgment. See *Peckham v. Ronrico Corp.,* 171 F.2d 653, 658 (1st Cir.1948). And second-hand gap–filling, if extreme enough, clearly can rise to the level of a contradiction. This would surely be true, for example, if a witness in his second statement "remembered" sa-

lient, memorable facts that (if true) he surely should have remembered and mentioned the first time around, or "remembered" facts which too conveniently explain away troublesome portions of the previous testimony. And this would be especially true if some intervening event—e.g., pressure by a party, prodding of counsel—made the embellishment seem fishy. Cf. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67 (7th Cir.1995) (reflecting suspicion of later affidavit used "to patch up" established deficiencies).

Here there is no such contradiction. Sullivan's declaration does not contradict her deposition but rather augments and elaborates upon it. The omissions on which Crockett pounces are easily attributable to understandable lapses of memory or lack of preparation. Cf. *id.* at 68 (statement in affidavit directly contradicted by earlier deposition will be disregarded "unless it is demonstrable that the statement in the deposition was mistaken, perhaps ... because a lapse of memory is in the circumstances a plausible explanation for the discrepancy"). At her deposition Sullivan appeared on some matters obviously ill-prepared. For example, she was rather general in her discussion of how the candidates failed to suit the Department's "skill mix" preferences. Sullivan Deposition at 59–60. She also couldn't recall when Stern had left the Department, when the vacancy was announced, who was on the selection panel, or the exact number of applicants for the job (though she did recall that it was "[f]ewer than we hoped for"). *Id.* at 51–52, 56, 58; see also *id.* at 57 (explaining that she had dealt with "a whole bunch" of vacancy announcements since becoming General Counsel about a year before). In her later declaration, presumably after reviewing her records and refreshing her memory, Sullivan addressed these gaps and was more specific. She was able to state precisely when Stern had left the Department, when the vacancy was an-

nounced, who was on the selection panel, and how many applications were received. Sullivan Declaration at ¶¶ 16–17, 19. Explaining again that the "recompete" was motivated by a desire "to depict the skills required for the job more accurately," she offered the specific example of "significant experience in Alternate [sic] Dispute Resolution." *Id.* at ¶ 22. And she additionally recounted a conversation with Rabben in which, as she recalled it, he said there was no candidate for the post "that the Committee believed had outstanding qualifications, and the Committee could therefore not make a strong recommendation." *Id.* at ¶ 21. This contrasted with Rabben's advice on other open positions. *Id.* While Sullivan's declaration did for the first time mention the Department's concern over attracting a "diverse pool of applicants" and the committee's lack of enthusiasm for the candidates, *id.* at ¶¶ 21, 24, these further recollections do not amount to contradictions.

Third, Crockett argues that Sullivan's account of the Merit Staffing Committee's view of the candidates (as reported to her by Rabben) was inadmissible hearsay, and that it was clear error for the district court to accept it. See Tr. of Motion Hearing at 65. But the assessments of the committee were not offered for the truth of "the matter asserted." Fed.R.Evid. 801(c). Sullivan's decisionmaking was under challenge, and she explained it on the basis of the information she received.

In his reply brief, Crockett additionally attempts to attack Sullivan's explanations as pretextual. These contentions, however, were not raised in Crockett's opening brief, see Crockett Brief at 31–36, and thus would normally be considered waived. *Board of Regents of the Univ. of Washington v. EPA*, 86 F.3d 1214, 1221 (D.C.Cir. 1996). That the Department offered a very limited discussion of pretext in its brief does not excuse or obviate Crockett's

omission. See *United States v. Wilson*, 240 F.3d 39, 45 (D.C.Cir.2001) ("[W]e are doubtful in any event whether gilding the lily in the appellee's brief should ever excuse an appellant's complete failure to [raise an issue in his opening brief].").

Because the district court rested its grant of summary judgment purely on the lack of adverse action (and thereby the lack of a prima facie case), however, Crockett may not have had sufficient incentive to raise the pretext issue initially on appeal. But cf. *United States v. McCoy*, 280 F.3d 1058, 1063–64 (D.C.Cir. 2002) (addressing waiver and the incentives to raise issues in the sentencing context). But even assuming arguendo that the issue was preserved, Crockett's arguments regarding pretext are unconvincing and would "require too much speculation to create a genuine issue of fact about [Sullivan's] motivations." *Carney v. American University*, 151 F.3d 1090, 1094 (D.C.Cir.1998). Crockett first charges that Sullivan's assertion of an effort to "place additional emphasis on judicial litigation experience," Sullivan Deposition at 59, must have been pretextual, evidently because Crockett (in his mind) so clearly outshone all other candidates in this dimension. We are uncertain just why Crockett regards this acknowledgement of interest in his long suit as a pretext, but to the extent that he is arguing that his judicial litigation experience was such that he would necessarily win an honest competition in which that factor played *any* role (and this is the nearest to a coherent theory we can discern), the argument seems nonsense. Employment decisions rarely (if ever) rest on a single attribute, and Crockett was only rated in the second tier of candidates in the 1998–99 round.

Crockett also finds pretext in Sullivan's comment that the initial vacancy announcement had not "sufficiently emphasized the need for a candidate with significant experience in Alternate [sic] Dispute Resolution." Sullivan Declaration at ¶ 22. ADR, he observes, was already mentioned in the initial vacancy announcement. But the word "sufficiently" presumes that the qualification was already there; if it wasn't "sufficiently" emphasized, it needed more forceful presentation. In fact, the proposed revision did create greater emphasis by shortening the list of requirements from seven to four. Because attainment of an overall rating of "Superior" requires a score of Superior in a majority of the named criteria, this reduction would have made it far more difficult for a candidate to rank Superior overall without showing "extensive experience in the successful use of ADR." See Crediting Plan for Assistant General Counsel for Contractor Litigation, Joint Appendix at 439. And of course, as with briefs, a statement of criteria with a few concise and focused entries gives those items more oomph than does a meandering laundry list.

\* \* \*

The judgment of the district court is *Affirmed*.